## TISHOMINGO SAVING INSTITUTION ET AL. *v.* ALLEN, WEST & BUSH.

1. CHANCERY PRACTICE. *Amendment. Time.*

    An amendment to a bill in equity was properly allowed nine years, eleven months and twenty days after the filing of the original bill, where, during nearly all of said time, proceedings in the cause in the state courts were suspended by an improper removal to the federal courts.

2. ASSIGNMENT FOR BENEFIT OF CREDITORS. *General. Money conveyed.*

    An assignment for the benefit of all of the assignors' creditors is a general one which conveys "all and singular the lands, tenements and hereditaments" of the assignors, "wherever situated, and especially that situated in" certain counties, "and all the goods, chattels, wares, merchandise, bills, bonds, notes, book accounts, demands, judgments, choses in action, evidences of debts and all property of every description and nature of the" assignors, excepting only property exempt from execution; and further specifying that "all property of every kind and description" of the assignors, save exemptions, "whether partnership or individual" property, is to pass by the instruments, and money is conveyed thereby.

3. SAME. *Attorney's fees for protecting fund.*

    If a suit by creditors to vacate a general assignment be improperly removed from the state to the federal court, and a decree be rendered in the inferior federal court vacating the assignment, and the same be enforced, the attacking creditors securing practically the whole fund, and, by the services of an attorney, the decree is reversed by the supreme court of the United States and the cause remanded to the state court, the attacking creditors restoring, or being bound to restore, the proceeds of the property received by them, the attorney will be entitled, in case the assignment is held valid, to have the funds charged with a reasonable fee for his services in securing the correct adjudication of the question of removal.

FROM the chancery court of Lee county.

HON. BAXTER MCFARLAND, Chancellor.

Allen, West & Bush, the appellees, were complainants in the court below; the appellants, Tishomingo Savings Institution *et*

*al.*, were defendants there.  Appellees filed their bill of complaint December 8, 1886, in the chancery court of Lee county, averring and charging that R. C. Cates, L. L. Cates, and D. Andrews, partners, composing the firms of Luke Cates & Co., Andrews, Cates & Co., and Cates & Andrews, being indebted to complainants in about $16,000, on or about the seventh day of December, 1886, made a "fraudulent, covinuous, and collusive" transfer and assignment of all their nonexempt property to J. K. Herman and F. G. Smith, as assignees, a copy of which assignment is exhibited with the bill as part thereof.    The bill charges that the assignment is "fraudulent in law and in fact," and null and void as to complainants and other creditors of said assignors, made without valuable consideration, and "with intent to hinder, delay, and defraud" complainants and other creditors in the collection of their claims, and if allowed to stand will so hinder, delay, and defraud them; that, under said assignment, the assignees claim title and possession of certain real estate, describing it, which title is fraudulent and void as to complainants and other creditors; and, in truth, the title still remains in said assignors, liable to be subjected to the demands of the creditors, and said assignment ought to be set aside, and the property subjected to complainants' debts; that the assignee, Smith, is in possession of a $10,000 stock of merchandise in Tupelo, claiming the same under the assignment; that Smith is insolvent, and if allowed to keep said merchandise there is danger that the same will be lost to complainants and other creditors, and irreparable injury will result to complainants; that assignee, Smith, had taken possessions of all the choses in action of assignors, Andrews, Cates & Co., amounting to $10,000, and is proceeding to collect the same, to the irreparable injury of complainants and other creditors; and "that all the notes, books of account, money, and choses in action, and other evidences of debt of the said Andrews, Cates & Co. are now in the possession of the said F. G. Smith, claiming under fraudulent transfer, and ought to be subjected to the demands of complainants;"

that assignee, Herman, claiming under the assignment, holds a stock of merchandise of about $5,000 value in Kossuth, in Alcorn county, and choses in action of about $5,000, all of which remain the property of the assignors, and ought to be subjected to the demands of complainants and other creditors. The prayer of the bill was, that the deed of assignment be declared fraudulent, null and void, and the property assigned subjected to the demands of complainants first and afterwards to those of other creditors, etc.; that the assignees be enjoined from acting under the deed; that a writ of sequestration issue; a receiver be appointed; that complainants be decreed to have a prior lien on the assigned property, etc.

By the deed of assignment the assignors—reciting that, being indebted to sundry persons in sundry amounts, which they are unable to pay in full—for a consideration of five dollars, assign and convey to Herman and Smith, assignees, after reserving their exemptions, "all and singular the lands, tenements and hereditaments of the said parties of the first part, wherever situated, especially that situated, lying and being in the counties of Alcorn and Lee, in the State of Mississippi, and all the goods, chattels, wares, merchandise, bills, bonds, notes, book accounts, claims, demands, judgments, choses in action, evidences of debt, and all property of every nature and description of the said first parties, whether as co-partners or as individuals, saving and reserving only as aforesaid." The deed goes on to prescribe the trust, and then, by way of final description of the property conveyed, uses this language: " It being the purpose and intention of the said first parties, both as partners and as individuals, to devote, in the way, manner and mode aforesaid, outside of their legal exemptions, as hereinbefore provided, to the payment and satisfaction of all of their indebtedness and liabilities of that, their entire partnership and individual property," etc.

Attached to the deed is a list of certain lands, designated as " the following described real estate conveyed in the said fore-

going assignment;'' also a list of creditors of the assignors, it being stipulated in the body of the assignment that if any creditors are omitted, they shall, notwithstanding the omission, participate in the benefits of the assignment.

Complainants sued out a writ of sequestration, under which the sheriff took possession of the property assigned. Other creditors were made parties complainant in the cause on their own petition. On December 15, 1886, the cause was removed to the United States court for the northern district of Mississippi, and on April 15, 1887, the Tishomingo Savings Institution, the appellant, was made party defendant on its own petition.

A demurrer was filed to the bill in the United States court for want of equity on its face—failure to show judgment and other causes—which demurrer was overruled; and the defendants, assignors, assignees and Tishomingo Savings Institution answered, denying the charges of fraud in the bill.

On December 21, 1886, by order of the United States court, W. J. Curtis and the said J. K. Herman were appointed receivers of the court in said cause, and put in possession of the assigned property.

On the issue as thus made by the pleadings, complainants proceeded to take testimony. And afterward, on October 28, 1887, a decree was made declaring the deed of assignment fraudulent and void, and subjecting the assigned property to the claim of complainants, Allen, West & Bush, under which, as the record shows, they received a large sum of money. Thereafter, on April 26, 1889, the assignors, assignees and the Tishomingo Savings Institution obtained an appeal from the federal court decree to the supreme court of the United States, by which court, in March, 1893, said decree was reversed and the cause remanded, with direction to remand the case to the state chancery court, from which it had been improperly removed. *Cates* v. *Allen,* 149 U. S., 451.

The cause being remanded to the state chancery court, the Tishomingo Savings Institution, appellant, was therein again

admitted as party to defend, and filed its answer, denying fraud and setting up its claim against the assignors. The assignors also filed their answer, denying the fraud charged. The complainants were required to give bond, with security, for the refunding of the money received by them in case of an adverse decree.

Complainants then took additional testimony, and, on agreement between counsel to use the depositions taken in the United States court, on the trial in the chancery court, complainants set the cause down for hearing on bill and exhibits, answer and proofs.

The cause came on for hearing, by agreement, in vacation, on November 19, 1896, when, for the first time, complainants asked to file an amendment to the original bill. The amendment made more specific the charges of fraud, and contained averments of specific facts upon which the charges of fraud were based. The court below allowed the amendment against the protest of defendants, to which they duly excepted.

To the bill as amended, defendants, by leave of court, demurred, having withdrawn their answer for that purpose. This demurrer was afterward overruled by the court, and from this decree overruling the demurrer defendants prayed and obtained an appeal.

A collateral issue in said cause, decided at the same time, was a claim of W. M. Inge, Esq., for a fee of $1,000 for services, as solicitor, rendered the trust fund in said cause by asserting the jurisdiction of the state chancery court over the same by demurrer and otherwise, which jurisdiction was fully adjudged to be in said state court by the supreme court of the United States. The chancery court allowed the claim of Inge, leaving the amount to be ascertained later. From this allowance the complainants prosecute a cross appeal to this court.

Defendants, appellants, assigned two errors: (1) The allowance by the chancery court of the amendment to the original bill, under the circumstances shown; and (2) the overruling of defendants' demurrer to the bill as amended.

Complainants, as cross appellants, assign as error the allowance by the chancery court of the fee to Inge.

*E. H. Bristow*, for appellant.

Recognizing, as I do, the liberality with which amendments are allowed in chancery pleadings and proceedings, I still most earnestly and emphatically submit that if there is any limit whatever to such allowance—if there are any conceivable circumtances under which such amendment should not be allowed —that limit has been reached, and those circumstances exist in the case at bar.    That parties should be allowed to experiment with the courts for a period of ten years, during which time they have tested the jurisdiction of two courts to the extent of filing their bill of complaint in one court and removing the cause to another; of asserting its validity and force in argument against a demurrer setting up want of equity; that they should demand and obtain a decree overruling the demurrer and requiring defendants to answer on oath; that they should proceed to take a huge volume of testimony, set the cause down for final hearing on the bill as filed, answer and proofs, demand and obtain a final decree granting the prayer of the bill as filed, and actually receive satisfaction of the decree to the extent of many thousands of dollars, which they hold for more than eight years; that, after the decree had been reversed on appeal, and the court rendering it decreed to be without jurisdiction, and the cause remanded to the original court in which it was filed, the complainants should proceed to take additional testimony, make agreements with opposite counsel as to testimony in the cause, set the cause down for hearing, and then, after the lapse of ten years, should be allowed an amendment of any kind, is certainly straining the indulgence of the court to the utmost.

But when we come to examine the original bill, and note its allegations and charges, and then examine the amendment asked to be allowed, we most respectfully submit that the al-

lowance of this amendment far transcends the limit of the court's indulgence, and should have been promptly denied.

The court below erred in overruling the demurrer to the amended bill. Leaving out the vague charges as to the "lands" and "choses in action," which are too vague, general and indefinite to require answer, the only specific charge of fraud in the bill is the reservation of $5,000 and other sums of money of the assignors, Andrews, Cates & Co., and its appropriation by and division among the assignors, etc.

Admitting this to be the case, I submit the deed of assignment shows clearly upon its face that it was never intended to include this money in the assignment, and that it was not included; in other words, the assignment, by its terms, was a partial one. A close and careful study of the deed of assignment will show not only that the money of the assignors was not included in it, but that all the granting and administrative provisions of the assignment are wholly inconsistent with its inclusion.

The presumption in favor of a deed of assignment being partial is so strong in Mississippi that such instruments have been held partial even though in fact it did convey all the assignor's property, where the terms of the deed did not plainly make it general. *Newman* v. *Black*, 73 Miss., 239; *Taylor* v. *Watkins*, 13 So. Rep., 811. Further than this, it has been held that when the terms of the deed of assignment do not plainly constitute a general assignment, it will be held a partial assignment, regardless of the intention of the assignor. *Jones* v. *McQuien*, 71 Miss., 98; *Allen* v. *Smith*, 72 Miss., 689. And, in view of the dominion which every man has over his property, partial assignments are just as much favored in law as general ones. *Goodbar* v. *Tatum*, 10 So. Rep., 578; *Taylor* v. *Watkins*, 13 So. Rep., 811. And no fraudulent reservation or disposition of any property not covered by the terms of the assignment will in anywise affect the validity of the assignment. *Thompson* v. *Preston*, 73 Miss., 587.

Applying these principles to the case at bar, the only charge of fraud specifically made by the amended bill is the reservation from the assignees of $5,000 in money of Andrews, Cates & Co., which should have gone to the assignees by the terms of the assignments. (For the present we leave out of consideration the vague charges as to the lands and choses in action as not being sufficiently definite to charge the defendants or. require answer.)

To make the reservation of the $5,000 in money fraudulent, it must be shown that it was, by the terms of the deed of assignment, included in the property and assets thereby assigned, and conveyed to the assignees. Is this the case? I confidently submit it is not.

What is the language of the assignment in the case at bar? The assignors, carefully reciting that they act both as individuals and as composing the three partnerships named, and that they are justly indebted to divers parties, the debts to whom they are unable to pay in. full, in consideration of five dollars from the assignees, and for other considerations afterward expressed, "have granted, bargained, sold and conveyed, and transferred, assigned, set over and released, and by these presents, after reserving to themselves and each of them, respectively, the property, real and personal, which by law they are entitled to as exempt from sale under execution or attachment, do grant, bargain, sell and convey, assign, set over and transfer unto the said second party, all and singular the lands, tenements and hereditaments of the said parties of the first part, wherever situated, especially that situated, lying and being in the counties of Alcorn and Lee, in the State of Mississippi, and all the goods, chattels, wares, merchandise, bills, bonds, notes, book accounts, claims, demands, judgments, choses in action, evidences of debt, and all property of every nature and description of the said first parties, whether as co-partners or individuals, saving or reserving only as aforesaid. To have and to hold the same and every part and parcel thereof, with all ap-

purtenances thereto belonging, to the said second parties, but in trust, however, for the following uses, intents and purposes, and none other—that is to say,'' etc.

It is clear from this language that the five thousand dollars in money, constituting so large and valuable a part of the assets of the assignors, and which, if intended to be included in the assignment, we may well suppose from its importance would be specifically named among the first of the assets named, is not mentioned by name among the assets assigned. If included at all among the assigned assets, therefore, it must be meant to be covered by the general language following the property specified, viz.: '' And all property of every nature and description of the said first parties, whether as co-partners or individuals.'' And I submit that, construing this language either by itself or in the light of the context and the surrounding circumstances, it cannot be held to include this five thousand dollars in money.

And, first, construing the language by itself, considering only in connection therewith that it is used in a legal document of conveyance, and that '' money '' is nowhere specifically named in the conveyance, I submit that the expression '' all property,'' etc., cannot be construed to mean '' money.'' In the first place, money, as a possession, is, in its nature and incidents, so diametrically different and distinct from every other conceivable possession that the word has come to be universally used in the popular acceptation as meaning something totally different from '' property.'' We hear every day the expression used, '' property and money.'' We say a man is worth so much in '' property and money;'' that an emigrant carries with him to his new home so much in '' property and money;'' that a debt has been satisfied or paid in '' property and money,'' etc. *Martin* v. *McNealey*, 101 N. C., 634; *McIntyre* v. *Ingraham*, 35 Miss., 25; *Mitchell* v. *Mitchell*, 35 Miss., 108.

But I submit the statutes of Mississippi settle the question as to the definition of the word '' property '' beyond all cavil. And certainly the courts, in construing legal instruments in

writing, would demand no better test of the correctness of the definition of a word or phrase than the statutory definition of its meaning as used throughout the code.   In other words, a grantor in a deed will be presumed, in the absence of a contrary intention appearing therein, to use language in the sense in which it is used in the statutes of the state, as therein defined.   The same rules apply to the construction of contracts as to that of statutes.   Bishop on Contracts, sec. 366; 2 Parsons on Contracts, sec. 502.

What is, then, the statutory definition of the word "property," as used in the laws of Mississippi?   "The term 'personal property,' when used in any statute, shall include goods, chattels, effects, evidences of rights of action, and all written instruments by which any pecuniary obligation, or any right, title or interest in real or personal estate, shall be created, acknowledged, transferred, incurred, defeated, discharged or diminished.   .   .   .   The term 'property,' when used in any statute, includes personal property as defined in the last preceding section, and also every estate, interest and right in lands, tenements and hereditaments."   Code 1880, §§ 3107, 3108; code 1892, §§ 1513, 1514.   In this definition there is only one word that could, by any possibility, be held to include "money," and that is the word "effects."   And this word has long been held not to include "money."   6 Am. & Eng. Enc. L., 174, 184; *Hotham* v. *Sutter*, 15 Vesey, Jr., 319; *McIntyre* v. *Ingraham*, 35 Miss., 25.

*Allen & Robbins*, for appellees and cross appellants.

We respectfully submit that the allowance of the amendment was entirely proper.   The facts stated in the amendment were taken almost verbatim from the testimony of the defendants themselves—their admissions as witnesses in the cause—and they can in no way be prejudiced by the allowance of the amendment. If it is a fact, as they have stated, then it occurs to us, after the evidence is taken, that, to conform the allegations to the

proof, amendments ought to be allowed, but this is a mere matter of discretion with the chancellor—it is true, a sound discretion, but one which, if not greatly abused, is not a reversible error. Even without the statute, amendments of this kind, where proof has been taken, and the admissions made by the defendants of matters which are not alleged in the bill, but which become important in view of the defendants' admissions, are allowed. But our statute says that "amendments shall be allowed in the pleadings and proceedings on liberal terms, to prevent delay and injustice." This amendment, as will be observed by comparing it with the original bill, is along the same lines as the original bill, making it more specific and definite, and making the charges almost in the language of the defendants in their testimony. We refer to § 542, code 1892.

Our court has already held that, even after a case has been in the supreme court and reversed, amendments may be made. *Hanserd* v. *Gray*, 46 Miss., 75. And even after the cause is set down for final hearing, it is error, so this court has said, to refuse an application to amend the bill, to cure a variance between the allegation and the evidence. *Jeffries* v. *Jeffries*, 66 Miss., 216; *Casey* v. *Palmer et al.*, 21 So. Rep., 752. We do not think it can be contended, with any reasonable force, that the complainants had been guilty of negligence.

This brings us to the consideration of the demurrer to the bill as amended. One ground of the demurrer which appellants insist ought to have been sustained, is that the amendment (and the original bill, as to that) treats the assignment as a general assignment, when it was in truth a partial assignment. If language can make an assignment general, the assignment attacked is a general assignment. We hope the court will not rest with our statement of this language, but will read the assignment itself. Almost every page and paragraph and sentence of it shows that it was intended to be understood as a general assignment. A general

assignment, as we understand it, is an assignment of all the debtor's property for the benefit of all his creditors.    In both respects the language of this assignment shows that it was general.    Not only does it purport to be, in the clearest language, for the benefit of all the creditors of both the firms involved in it and of the individuals, but, also, it is as clear as language will make it, that the assignment was of all the property of the assignors, as partners in the several firms and as individuals, going into a minute enumeration of the property, so as not to have anything omitted, and on every occasion where enumeration is made winding up with the general and comprehensive and sweeping declaration that all of their property is intended to be conveyed except their exemptions.    The form of the assignment is such as general assignments usually take, and not the form used in making partial assignments.    With all due respect to our distinguished opponent, we submit that this idea is an afterthought—one which astute counsel was driven to take because of the great emergency in which he was thrown. The proof in the case was so clear, from his own clients, of the grossest and most outrageous frauds, that he was driven to this subterfuge about the assignment being only a partial one.    The contention is, that money was not meant to be conveyed by the assignment because it is not especially mentioned. The language in one place is: ''All the goods, chattels, wares, merchandise, bills, bonds, notes, book accounts, claims, demands, judgments, choses in action, evidences of debts, and all property of every nature and description of the said first parties, whether as co-partners or as individuals, saving their exemptions   .   .   .   to the assignees, to have and to hold the same and every part and parcel thereof.''    In another place it is said: '' It is the intention of the assignors, both as partners and as individuals, to devote, in the way and manner and mode aforesaid, outside of their legal exemption, to the payment and satisfaction of all their indebtedness and liabilities, their entire partnership and individual property.''    And, again, it says:

"That the lands of assignors, and each of them, whether described herein or not, or the schedule of lands, are all intended to be conveyed by this instrument . . . . as well as all the other of said property conveyed hereby." Then as to the creditors, after enumerating them in every conceivable form, so as not to omit any, it is said "that if any be omitted, it is intended that they shall participate in the benefits of this assignment, nevertheless." That proposition, about this being a general assignment, seems to us to be too clear, when the assignment itself is read, to admit of doubt or even of argument, and with these remarks on this feature of the case we submit this question.

One other contention of the appellants and we have done with this phase of the case. They contend that the reservation of the money did not vitiate the assignment, even if it is as alleged in the amended bill. We will content ourselves on this point with the citing of a few authorities from this court. We start out with the assumption that the assignment is a general assignment. The reservation of money by the assignor, when making a general assignment, will avoid the assignment, although the reservation be only of one day's sales by a merchant. *Mahorner* v. *Forchheimer et al.*, 73 Miss., 302; *Allen* v. *Smith*, 72 Miss., 689. In the case of *Montgomery* v. *Goodbar*, 69 Miss., 333, the assignee retained only one hundred dollars for family expenses, but it was held to avoid the assignment.

The sole basis of the claim for attorneys' fees is the filing of the demurrer in the federal court for the defendants in the creditor's bill, and compensation is claimed for this of $1,000. The chancellor, as we contend, erroneously concluded that counsellor Inge, as such solicitor, was entitled to something, but referred the question of the amount to a commissioner, and held its determination in abeyance until the coming in of evidence showing the amount. We, for appellees as cross appellants, assign as error this action of the court in

entering this decree, and, to save further expense and litigation by taking testimony on this question, the principles having been settled by the chancellor, we appeal to this court for a reversal of that decree. The printed records, of course, must show, and do show, what was done in the United States court. As before stated, it could not have been to advise about the management of the assigned property while in the hands of the assignees, for it was not in their hands but a day or two. It was not for representing the receivers appointed by the court, for counsellor Inge did not represent these in any proceeding, as shown by the record, nor does he claim to have represented them as receivers under appointment of the court. The chancellor is a learned and impartial chancellor, and is usually clear headed, but in this instance he certainly got a crotchet in his head in some way. Here is an assignment made by which a considerable amount of property is transferred from assignors to assignees. The assignees remain in possession but one day. Their possession is taken from them by the court, and placed in the hands of receivers appointed by the court. The assignors, assignees and one of the preferred creditors contest the case made by the creditor's bill by other creditors seeking to set aside the assignment as fraudulent. Pending that suit, before there is a decree, so far as this case is concerned, rendered in the state court deciding the question at issue between them, before the complainants have an opportunity of presenting to the court the question of the fraud and collusion in the assignment, before the court has an opportunity of investigating the *bona files* of the transaction, the defendants' counsel, while thus contesting the rights of the complainants to subject the property to the payments of debts which the complainants claim the assignors owe them, and which they claim this property is liable for, and claim a lien on the property assigned for the payment of that debt—before the determination of this question, the counsel for the defendants moved to require the complainants to pay them out

of the funds attorneys' fees for fighting them. That is the question presented, which was presented to the chancellor in the court below, and which he erroneously decided in favor of the defendants and their solicitors. In other words, while we are contesting with them in the chancery court, seeking to subject their property to the payment of our debt, we must furnish them the means to litigate with us the correctness of our contention; furnish them the means to defeat us in the prosecution of our claim; furnish them means to enable them to litigate with us as long as possible. We have heard of war, but never of a war where one side was compelled to furnish the other with amunition to fight. Why, surely, the chancellor must have gotten confused by reason of proceedings for alimony. There is no other case, except in case of alimony *pendente lite*, where, before the determination of the case, before any principle in it is settled, before any question is adjudicated, one side is compelled to contribute to the support and maintenance of his opponent's cause. The adoption of such a rule as this might, in some cases, help out an embarrassed litigant, but it would certainly be destructive of all precedents, and of all the principles on which we have learned to rely. It would be a new practice, in our humble judgment, and one that is without excuse. Litigants must supply their own counsel; they must rely on their own efforts to procure counsel; they must pay their own counsel fees. Of course, if the assignment is upheld and declared to be legal, and to convey the property to the assignees, and the real title to be in them, and not in the assignors, as we claim, then the court, after the matter is adjudicated, out of the property and assets assigned, might and would allow the assignees such reasonable expenses as they had incurred in litigation, including reasonable attorney's fee. But, pending the litigation and before it is determined, and when there is no necessity for the peculiar representation of the assignees, when the fight is being made by the assignors and by a preferred creditor, as full and complete a contest being made as can be made by the assignees, there is

no necessity for any peculiar representation of them aside from the assignor and the preferred creditor.    Why, the court will certainly not make an allowance of attorney's fee.    Why, if the court please, we expect to gain this suit.

*W. J. Lamb*, for the assignees and in behalf of attorney W. M. Inge.

Of the services being rendered by Col. Inge there is no controversy, and the only question before the court is whether such services as were rendered the trust fund should be paid for out of said fund.    We submit that Col. Inge's demurrer saved the estate from being adjudicated in a court without jurisdiction, which would have rendered all proceedings regarding said estate mere nullities, and would have subjected the trust funds to numerous kinds of litigation, and the whole fund, or the greater part thereof, would have been squandered in litigation.    We submit that the rule to govern in such cases has been settled by this court, as well as many other courts of last resort.    In the case of *Perry-Mason Shoe Co.* v. *Sykes*, 72 Miss., 395, this court said:  " It will serve to clear the real point under review of embarrassment to say the services of the attorneys of the assignees and receiver, rendered in successfully defending the claim made by Bolton and the Perry-Mason Shoe Co., in their cross petition, whereby they sought to rescind the sales and recover the specific goods, were services for which compensation was properly allowed, as having been rendered in litigation resulting in the preservation for all entitled to the property, either under the assignment or the cross petition.    These services resulted in preventing the withdrawal from the property assigned of a part of it, open alike to those protected by the assignment, if it had stood, or those who, as successful cross petitioners, fastened liens upon it."    Again, the case of *Haydock Carriage Co.* v. *Pier*, 78 Wis., 582, is decisive of this point.    Fees were allowed the assignee's attorney in that case for successfully defending a replevin suit seeking to withdraw a part of

the property assigned. The court say: "Such defense was made for the purpose of saving the property there in controversy to the creditors of the assignor. The expense incurred in making defense should be reimbursed to the assignee out of the proceeds of the assigned property. She must be allowed all of her necessary disbursement in that action in both courts, including attorney fees. The principle underlying this allowance is clear. *Perry-Mason Shoe Co.* v. *Sykes*, 72 Miss., 395." The supreme court of Wisconsin, in the same case, again says "that, in a case like this, in which the assignee has acted under the direction of the court and in perfect good faith, believing the assignment valid, he will be allowed for all such necessary disbursements as benefit all the creditors of the assignor." *Haydock Carriage Co.* v. *Pier*, 78 Wis., 581; *Hunker* v. *Bing*, 9 Fed. Rep., p. 277. Again: "If any item of expenditure was for the benefit of all the creditors of the assignor, the same should have been allowed the defendant." The same principle is laid down in the following cases: *Woodruff* v. *N. Y. L. E. & W. R. R. Co.*, 129 N. Y., 31; *Clark* v. *Sawyer*, 151 Mass., 64; *Hastings* v. *Spencer*, 1 Curtis, 504; *Platt* v. *Archer*, 13 Blatchf., 351; *Bartlett* v. *Bramhall*, 3 Gray, 257; *Wakeman* v. *Grover*, 4 Paige, 23, 43; *Hunker* v. *Bing*, 9 Fed. Rep., 281–283; Burrill on Assign. (6th ed.), sec. 380; *Mayes* v. *Hayard*, 49 Hun, 226, 227; *Hastings* v. *Spencer*, 1 Curtis, 506, 507.

Argued orally by *E. H. Bristow*, for appellant, by *J. Q. Robbins*, for appellee, and by *W. J. Lamb*, for his clients.

WHITFIELD, J., delivered the opinion of the court.

Under the very peculiar circumstances of this case, we think the amendment was properly allowed. The assignment is a general assignment, more clearly so, if possible, than the one in *Montgomery* v. *Goodbar*, 69 Miss., 333, and under the terms of this assignment, in the light of that decision, it must be held that the money was embraced.

The action of the chancellor in holding Col. Inge entitled to some reasonable compensation, was correct.  The amount is still to be ascertained, and will be limited to the services rendered by him in questioning the jurisdiction of the federal court by the demurrer.    That service was rendered in bringing the funds back within the jurisdiction of the only tribunal competent to legally deal with them and dispose of them for the benefit of the parties entitled.    Such services contributed to the legal preservation of the funds, and a reasonable compensation for them is a proper charge on the funds.    The facts furnish a novel application of the rule, but one within the principle of the rule.    He is to be allowed nothing now for any other services, nor ever, unless the assignment be sustained; nothing for any services rendered in attempting to defeat the attaching creditors, and nothing for services in the United States supreme court, if it shall turn out, as alleged, that he took no part in those services, and if any sums have been paid him by the preferred creditors, or the assignors, whom he also represented, for questioning the jurisdiction of the federal court by the demurrer, such sums must be credited on what may be found to be reasonably due for such last services.    *Shoe Co.* v. *Sykes*, 72 Miss., 392.

*The decree is affirmed on the appeal and the cross appeal.*

*E. H. Bristow*, for appellants, after the rendition of the foregoing opinion, filed an elaborate suggestion of error, to which the court made the following response, denying the same:

Whitfifld, J., delivered the response to the suggestion of error.

The assignment opens with " Granting, etc., after reserving to themselves, and each of them respectively, the property, real and personal, which by law they are entitled to as exempt, .   .   .    all and singular the lands, tenements, and hereditaments of the said parties of the first part, wherever situated,

and especially that situated, lying, and being in the counties of Alcorn and Lee and State of Mississippi, and all the goods, chattels, wares, merchandise, bills, bonds, notes, book accounts, claims, demands, judgments, choses in action, evidences of debts, and all property of every description and nature, of the said first parties, whether as co-partners or as individuals, saving and reserving only as aforesaid,'' etc. And then, after setting out the various provisions of the assignment, the grantors, by way of final summary, say: ''It being the purpose and intention of the said first parties, both as partners and as individuals, to devote, in the way, manner, and mode aforesaid, outside of their legal exemptions, as hereinbefore provided, to the payment, etc., their entire partnership and individual property of every kind or description as aforesaid, saving,'' etc. Could the intent to assign all property of every kind—money and everything else— be manifested in language plainer, clearer, more unmistakable?

We said nothing as to the doctrine of *ejusdem generis* in our opinion, because we thought the intent too plainly manifest to leave room for any discussion of that doctrine. So great, however, is our regard for the eminent counsel representing appellant that we have re-examined the subject, with the result of greatly strengthening our confidence in the correctness of the conclusion first arrived at. Take the comprehensive description first above cited in granting part of the assignment, and in the summary, and how applicable are these words from the United States supreme court, in *Alabama* v. *Montague*, 117 U. S., 609, 610: ''It is not to be denied that, in a writing descriptive of property to be transferred or assigned, the more general words, which include all that is intended to be conveyed, are not to be frittered away by an attempt at a description of each particular thing fairly included in the more general language.'' And the court say that wherever the more general words are found ''at the end, as a summary of what had preceded them,'' they control. It was perfectly plain in *Alabama* w. *Montague, supra,* that the doctrine of *ejusdem generis* had

appropriate play, "all other property." meaning, of course, from the whole scope of the instrument and the collocation of these words, property belonging to the "line of said road." And it is just as clear in *Spindle* v. *Shivers*, 111 U. S., 542, 544, and *Wilson* v. *Boyce*, 92 U. S., 320, 325 (which see specially), that there was, as here, no room for the play of the doctrine.

*Suggestion overruled.*